Hon. Eric R. Komitee
U.S. District Judge
EDNY
225 Cadman Plaza
Brooklyn, New York 11201

RECEIVED IN PRO SE OFFICE
FEB 10 2023

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 10 2023 ★
BROOKLYN OFFICE

p.1/4

Feb. 6, 23

RE: Schulte v. United States, 22 CV 5841 (ERK)

Dear Judge Komitee:

The government had the exhibits to my Rule 41(g) motion removed in an attempt to hide their crimes — there is absolutely no legitimate reason to hide the illegal search warrants or 6/3 transcript and I had no reason to believe these documents were subject to sealing. I hereby move to remove the sealing and return the exhibits to the public docket.

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." United States v. Erie Cnty., N.Y., 763 F.3d 235, 238-39 (2d Cir. 2014). Federal courts base this right of public access on the common law and the First and Sixth Amendments. See Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013); In re Application of WP Co., 201 F. Supp. 3d 109, 117 (D.D.C. 2016). The illegal search warrants and 6/3 transcript contain no sensitive information, and indeed, the CIA has already conducted a classification review and redacted materials from the transcript before classifying it as UNCLASSIFIED.

A. The illegally obtained search warrants and transcript are entitled to a strong presumption of public access under the common law.

A court considering whether materials should be kept from the public must analyze the right to access under the common law and the First Amendment. The "common law right of public access to judicial documents is said to predate even the Constitution itself." Erie Cnty., 763 F.3d at 239. Under the common law, judicial documents are "presumed to be publicly accessible." Id. The court must first determine whether the documents at issue are "judicial documents"

p.44

to which a common-law right of presumptive access attaches. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). If so, the court must then determine the weight of that presumption. Id. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995)). Finally, the court must balance the weight of the presumption against any countervailing interests against disclosure. Id. at 120 (citing Amodeo, 71 F.3d at 1050). "Only when competing interests outweigh the presumption may access be denied." Erie Cnty, 763 F.3d at 239 (citing Lugosch, 435 F.3d at 119-20).

The Second Circuit has already held that search warrant materials are judicial documents subject to at least the common-law right of access. In re Application of Newsday, Inc., 895 F.2d 74, 79 (2d Cir. 1990) (search warrant materials are public documents "subject to a common law right of access"); see also Baltimore Sun Co. v. Goetz, 886 F.2d 60, 64-65 (4th Cir. 1989) ("affidavits for search warrants are judicial records" to which the press and public "have a common law qualified right of access"). The transcripts of judicial proceedings are likewise judicial documents by definition. Moreover, both the transcripts and illegal search warrants are paramount in this court's decision on the Rule 41(g) motion. The transcripts directly contradict the fabrications and falsifications sworn in the illegal search warrants and must be publicly accessible to ensure adequate monitoring of this justice system. Finally, the government's concealment of these judicial documents to conceal their fraud and constitutional violations is not a legitimate countervailing issue; there is no countervailing interest whatsoever—there is no government informant and the information has already been disclosed to the target—Mr. Schulte—who remains incarcerated and tortured in a concentration camp.

B. The materials are entitled to a strong presumption of public access under the First Amendment

To determine whether a First Amendment right of access attaches, the courts apply the "experience and logic" test, which asks (a) whether the documents in question "have historically been open to the press and general public," and (b) whether "public access plays a significant positive role in the functioning of the particular process in question." Lugosch, 435 F.3d at 120 (citing Hartford Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)). If a First Amendment right is found, the document may be sealed only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Erie Cnty., 763 F.3d at 235 (citations and internal quotations omitted).

In this case, both "experience and logic" demonstrate that the First Amendment guarantees access to the illegal search warrants and transcript. The illegal search warrants contain public information and false statements from the FBI—neither of which militate sealing. The transcript, particularly the truncated exhibit of the transcript also contains no sensitive information—it was declassified and the truncated exhibit only pertained to the government's illegal actions which directly contradicted the fabrications in the illegal search warrants.

Moreover, warrant materials "have historically been available to the public" and therefore meet the "experience" prong of the First Amendment right-of-access test. ~~[scribbled out text]~~ See In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 573 (8th Cir. 1988) (holding that First Amendment right of access extends to warrant materials even during an ongoing investigation because such materials "are routinely filed with the clerk of court without seal" and "[u]nder the common law judicial

records and documents have been historically considered to be open to inspection by the public"). The common-law tradition of access to warrant materials also weighs strongly in favor of a First Amendment right of access. See Pellegrino, 380 F.3d at 92 (Courts "have generally invoked the common law right of access to judicial documents in support of finding a history of openness"). And of course, transcripts of pretrial conferences are routinely publicly docketed.

The search warrants also satisfy the "logic" prong of the test because "[s]pecifically, with respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system." In re Application of New York Times Co. for Access to Certain Sealed Court Records, 585 F. Supp. 2d 83, 90 (D.D.C. 2008) ("Public access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police.") (citing United States v. Leon, 468 U.S. 897, 917 n.18 (1984)); see also Gunn, 855 F.2d at 573 ("[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct."). In this case, disclosing the search warrant materials and transcript would allow the public to learn, inter alia, that the government falsified evidence, fabricated evidence, and perpetrated a fraud on the court in reckless disregard of the truth.

## CONCLUSION

The government cannot meet its burden to continue hiding the search warrants and transcripts because sealing documents to conceal crimes is not a legitimate reason; there is no sensitive information in either. Accordingly, based on the common-law and First Amendment, the Court should order the government to remove the illegal search warrants and 6/3/22 transcript from the seal, and the Rule 41(g) exhibits should be refiled on the public docket.

Respectfully Submitted,

2/6/23  Josh Schulte

Josh Schulte #74471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

ATTN: Schulte v. United States, 22-cv-5860
Pro Se Intake Office
U.S. District Court EDNY
225 Cadman Plaza
Brooklyn, New York 11201

NEW YORK NY 109
8 FEB 2023 PM 1 L

11201-183299

LEGAL
MAIL

METROPOLITAN DETENTION CENTER
80 29TH ST, BROOKLYN, NY 11232
The enclosed letter was processed through
mail procedures for forwarding to you
The letter has neither been opened nor inspected.
If the writer raises a question or a problem over
which this facility has jurisdiction, you may wish
to return the material for further information
or clarification. If the writer encloses correspondence
for forwarding to another addressee, please
return the enclosure to the above address