

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 3, 2023

**BE ECF**

The Honorable Eric R. Komitee
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

    Re:    *Joshua Adam Schulte v. United States of America*,
            **22 Civ. 5841 (ERK)**

Dear Judge Komitee:

    The Government respectfully submits this letter in opposition to *pro se* plaintiff Joshua Schulte's ("Schulte") motion pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure (D.E. 11) (the "Motion") for the return of a discovery laptop, seized from Schulte at the Metropolitan Detention Center ("MDC") pursuant to a search warrant.

    The motion should be denied. First, the relevant warrants are valid and amply supported by probable cause. Second, the Subject Device[1] is original evidence in an ongoing investigation of Schulte's receipt, possession, or transportation of child sexual abuse materials ("CSAM"), in violation of 18 U.S.C. §§ 2252A, and other offenses, being conducted by the Federal Bureau of Investigation ("FBI") and the U.S. Attorney's Office for the Southern District of New York, as well as potentially evidence at his upcoming trial on CSAM charges. Third, the Subject Device contains CSAM, contraband that the defendant cannot lawfully possess. Fourth, because of Schulte's history of security violations both prior to and during his incarceration, including his most recent unlawful possession of CSAM on the Subject Device, he can no longer possess a laptop of any kind at the MDC. Any one of these reasons requires denial of the Motion.

## Background

    The background of Schulte's criminal offenses and prosecution and the investigation that led to the seizure of the Subject Device is described in more detail in the Government's motion

---

[1] Defined terms and abbreviations in the Government's motion to dismiss Schulte's complaint (D.E. 8) ("Motion to Dismiss") have the same meaning in this submission.

to dismiss Schulte's complaint (Mot. Dismiss at 2-6). That background is summarized briefly below:

Schulte, a former computer programmer for the Central Intelligence Agency ("CIA"), is presently an inmate at the MDC. Schulte was found guilty, following a jury trial held in 2020 before the Honorable Paul A. Crotty in the Southern District of New York, of one count of contempt of court, in violation of 18 U.S.C. § 401(3), and one count of making false statements, in violation of 18 U.S.C. § 1001; and was also found guilty, following a jury trial held in 2022 before the Honorable Jesse M. Furman, of four counts of espionage and attempted espionage, in violation of 18 U.S.C. §§ 793(b) and (e), four counts of computer hacking, in violation of 18 U.S.C. §§ 1030(a)(1) and (a)(2), and one count of obstructing justice, in violation of 18 U.S.C. § 1503. Schulte is also charged with CSAM and copyright offenses, for which trial is scheduled to commence on September 11, 2023. (Mot. Dismiss at 2-3).

The charges against Schulte stem from his 2016 hacking of a CIA computer network in order to steal a library of highly classified CIA cyber tools—computer programs used for foreign intelligence gathering—and subsequently sending those cyber tools to WikiLeaks.org, which published data from the cyber tool library throughout 2017. Schulte obstructed the resulting investigation of his espionage and hacking crimes by lying to FBI special agents and prosecutors. In the course of executing a warrant to search Schulte's home computer, FBI agents also discovered large volumes of CSAM. Following his arrest, initially on CSAM charges, Schulte violated conditions of bail that prohibited him from computer access, and he was ordered detained. Schulte was held at that time at the Metropolitan Correctional Center ("MCC"), where he procured access to smuggled contraband cellphones that he used to establish pseudonymous social media accounts and encrypted email accounts and messaging accounts. Schulte used these accounts to disclose discovery from his case to a reporter, in violation of a discovery protective order; to disclose classified information about his former CIA group to this reporter; and to attempt to release social media postings containing additional classified information about his former work as a CIA programmer. (Mot. Dismiss at 1-2).

In October 2018, Special Administrative Measures ("SAMs"), 28 C.F.R. Part 501, were imposed on Schulte based on his having leaked and attempted to leak classified information and criminal discovery materials governed by a protective order. (Mot. Dismiss at 3).

Shortly before the 2022 trial, information technology personnel employed by the U.S. Attorney's Office learned of suspicious activity on the Subject Device, which Schulte was using for discovery review and trial preparation purposes. Following the conclusion of trial, the First Laptop Search Warrant was issued by a magistrate judge in this District. (Mot. Dismiss at 4 & Ex. A). In reviewing the contents of the Subject Device pursuant to this warrant, FBI agents encountered CSAM. Judge Furman issued the Second Laptop Warrant, expanding the scope of the review of the Subject Device's contents. (Mot. Dismiss at 4-5 & Ex. B). A third warrant was issued by a magistrate judge in this District to search Schulte's cell at the MDC (Mot. Dismiss at 6 & Ex. C), and a fourth warrant was issued by Judge Furman to search electronic devices that Schulte had access to in the courthouse Sensitive Compartmented Information Facility ("SCIF"). (Mot. Dismiss at 6 & Ex. D).

On or about September 23, 2022, Schulte filed a *pro se* complaint (D.E. 1) (the "Complaint") seeking (1) an order compelling the disclosure of the affidavit submitted in support of the First Laptop Warrant, and (2) an order prohibiting the Government from reviewing the contents of the Subject Device.

On October 6, 2022, copies of the affidavits in support of the First Laptop Warrant, the Second Laptop Warrant, the MDC cell search warrant, and the SCIF devices search warrant were disclosed to Schulte's criminal defense counsel in discovery, subject to a protective order. (Mot. Dismiss at 6). On January 22, 2023, the Government filed the Motion to Dismiss the Complaint. (*See also* D.E. 9 (exhibits to Motion to Dismiss)).

On January 31, 2022, Schulte filed the *pro se* Motion. In his Motion, Schulte argues that the First Laptop Warrant issued by Judge Pollack is invalid (Mot. at 1-17), that the search of the Subject Device exceeded the scope of the First Laptop Warrant (*id*. at 18-20), that MDC search warrant is also invalid (*id*. at 20), that there is no CSAM on his laptop (*id*.), and that the MDC search exceeded the scope of the warrant. (*Id*. at 21-22).

## Discussion

Rule 41(g) of the Federal Rules of Criminal Procedure provides that:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property=s return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

To prevail on a Rule 41(g) motion, the movant "must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987); *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005); *see also Aigbekaen v. Fu*, 18 Civ. 6529 (EK) (RLM), 2021 WL 1176167, at *2 (E.D.N.Y. Mar. 29, 2021) (denying a motion for the return of property where an appeal from the defendant's conviction was pending); *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) (courts should deny a Rule 41(g) motion where "the government's need for the property as evidence continues") (internal quotations and citations omitted); *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) ("Generally, a Rule [41(g)] motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.") (internal quotations omitted).

Schulte's Motion fails for multiple reasons. First, Schulte has not shown that the search was unlawful. Second, the Government has continuing need for the Subject Device as evidence, both in its ongoing investigation of Schulte's most recent CSAM offenses and a potential evidence in connection with the currently scheduled CSAM trial. With respect to the evidentiary use of the laptop and its contents, even if Schulte were correct that the First Laptop Warrant was invalid—which he has not—the Subject Device may still be admissible based on the agents' good faith reliance on the two search warrants, or at stages of the proceedings where the exclusion remedy does not apply. Third, the Subject Device contains contraband that the defendant cannot lawfully possess. Finally, the defendant cannot possess any laptop at the MDC, whether the Subject Device or any other laptop, and it will not be provided to him there.

The Warrants are Valid. As Judge Furman has already observed, "The government obtained a valid search warrant, it is, pursuant to the terms of that warrant, entitled to review the laptop, and for reasons I have already explained I am not prepared to take any action either to halt that review or to or to provide a substitute laptop at the moment." Crim. Dkt. Oct. 7, 2022 Tr. at 3. Schulte has not met his burden of showing that the warrants were unlawful.

Schulte alleges that some of the facts set forth in the affidavit in support of the First Laptop Warrant were obtained pursuant to an unlawful search of the Subject Device in June 2022 (Mot. 5-6), but his own argument belies that assertion. Schulte consented to government personnel taking possession of the laptop and performing certain administrative and maintenance functions in an effort to retore its operability. The trial team agreed that it would not view or learn of any content on the laptop. (*Id.*). The facts set forth in the affidavit in support of the First Laptop Warrant were learned by IT staff in the course of performing exactly the functions that Schulte agreed they could perform (Ex. A ¶ 6(t)).[2] The information concerning the Subject Device learned from the maintenance operation was limited solely to non-content information: (1) the Subject Device has a user BIOS account, which was not on the Subject Device when it was originally provided to Schulte at the MDC; and (2) the hard drive had a 15-gigabyte encrypted partition. (*Id.*).[3]

---

[2] Exhibit A, B, C, D, and E hereto are copies of the affidavits in support of the First Laptop Warrant, Second Laptop Warrant, MDC search warrant, SCIF devices search warrant, and a warrant for additional hard drives at the MDC. Those affidavits relate to an ongoing investigation, and were produced to Schulte pursuant to a protective order that requires that they be filed under seal. The Government respectfully requests that those exhibits be filed under seal. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (noting that potential for disclosure to "adversely affect law enforcement interests" can support sealing of judicial documents).

[3] Schulte argues that checking the laptop for operability exceeded the scope of his consent (Mot. at 7-8), but this claim is specious. Schulte claimed that the laptop had been damaged by being dropped (though, as it turned out, he was simply using the wrong power cord). Turning the laptop on and logging in are basic functions to ensure operability. If a hard drive swap had been necessary, the same functions would have been necessary to confirm the laptop booted and the hard drive would operate. That, in fact, is why Schulte provided his password, which was only needed to power on and log in to the laptop. Notably, Schulte did not object to the scope of IT's functions in June—only afterwards, when the laptop was searched and CSAM was discovered.

Schulte also argues that the Government conducted a complete search of the Subject Device in June 2022, "using the June 3rd hard drive swap as a pretense to copy Mr. Schulte's work product before trial to ensure strategic dominance." (Mot. 22). This accusation is false. As described in the affidavit in support of the First Laptop Warrant, "Because of the possibility the Subject Device contained attorney-client communications, attorney work product, or trial preparation materials, IT staff was instructed not to substantively review data on the Subject Device." (Ex. A ¶ 6(t)). IT staff obtained only the non-content information described above, and did not even check to see if Schulte had made changes to the laptop's hardware, such as reconnecting the WiFi card. (*Id*.) In addition to this non-content information, the affidavit describes Schulte's history of manipulating electronic devices for illegal purposes (*id*. ¶¶ 6(a)-(p)), and his use of the Subject Device to create and compile a computer program using software that was not on the Subject Device when it was provided to him at the MDC and which could be used to create malware. (*Id*. ¶ 6(v)).

Schulte makes several arguments attacking the veracity of allegations regarding the BIOS settings or his creation of an encrypted partition (Mot. 11-14), but these do not show that the First Laptop Warrant is invalid. A sworn affidavit from a law enforcement officer established probable cause for the search. Schulte's factually unsupported attacks on the veracity of the affidavit fall far short of showing that the warrant was unlawful. *See United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) ("We accord 'great deference' to a judge's determination that probable cause exists, and we resolve any doubt about the existence of probable cause in favor of upholding the warrant.") (citation omitted); *see also Franks v. Delaware*, 438 U.S. 154, 117 (1978) ("[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). Moreover, even if Schulte were able, *arguendo*, to show that the facts surrounding his changes to the BIOS did not add to probable cause, the remaining allegations in the affidavit are sufficient to establish probable cause based on his history of manipulating electronic devices for unlawful ends and his use of the laptop to write and compile source code with software that was not approved by the U.S. Attorney's Office or the MDC.

Schulte also attacks the scope of the search pursuant to the First Laptop Warrant (Mot. at 18-19), but that is irrelevant to the Rule 41(g) motion. In his criminal prosecution, Schulte may choose to challenge the admissibility of evidence that he contends falls outside the scope of the warrant and was not otherwise lawfully obtained—such as evidence encountered in plain view while the agents were executing the warrant—but that does not make the seizure of the laptop unlawful or require its return under Rule 41(g).

Schulte's attack on the scope of the search pursuant to the MDC cell search warrant requires little discussion. Schulte argues that the warrant did not authorize the seizure of discovery materials held outside of his cell. (Mot. 21). After the execution of the MDC cell search warrant, a supplemental search warrant was issued to seize three additional hard drives. (Ex. E). The two warrants collectively authorized the seizure of all of the seized electronic devices. Schulte also argues that there was no probable cause to seize his paper notebooks (Mot. 21), but the supporting affidavit explained that notes and handwritten materials may contain

passwords or other information necessary to decrypt encrypted data, and that Schulte previously had maintained notebooks with passwords. (Ex. E ¶ 8).

The Government's Need for the Evidence is Ongoing. The Subject Device was lawfully seized and is evidence in connection with the Government's ongoing investigation of Schulte's most recent CSAM offenses. The fact that the investigation is ongoing is demonstrated by the execution of additional search warrants and the supporting affidavits' description of the nature of that ongoing investigation. (*See* Ex. B, C, D, E).

The Subject Device is not only evidence relating to this ongoing investigation, but may also be evidence in connection with the defendant's September 11, 2023 trial on CSAM charges. As noted above, even if, *arguendo*, Schulte were able to successfully challenge the validity of the warrants, the Subject Device and its contents may nonetheless be admissible based on the agents' good-faith reliance on the facially valid warrants. *See United States v. Falso*, 544 F.3d 110, 125-29 (2d Cir. 2008) (upholding application of good-faith exception where the magistrate was not misled and the affidavit was not so lacking in indicia of probable cause as to render reliance unreasonable).

The Subject Device Contains Contraband. In addition, the Subject Device contains contraband—namely, CSAM—that the defendant cannot lawfully possess. The Subject Device contains:

> [n]umerous images and videos depicting what Agent-1 assessed to be child pornography. This material included images and videos depicting what Agent-1 assessed to be prepubescent children in various states of undress, some fully nude and some exposing the genitalia. For example, Agent-1 observed an image of what Agent-1 assessed to be a prepubescent girl exposing her vagina for a photograph.

(Ex. B ¶ 8). Schulte argues that "the only pornography on the laptop was adult pornography provided by the government pursuant to Fed. R. Crim. P. 16; they are files from public, mainstream porn websites like pornhub.com. They are not even close to child pornography." (Mot. at 20). Schulte's conclusory assertion is obviously false and squarely contradicted by the affidavit in support of the Second Laptop Warrant.[4]

Schulte Cannot Possess Any Laptop at the MDC. Finally, Schulte is not permitted to possess a laptop at the MDC at all, whether it be the Subject Device or any other device. After the discovery of CSAM on the Subject Device, the Government informed Judge Furman and the defendant that "the Government cannot at this point consent to providing the defendant with a replacement laptop under any conditions, in light of both his convictions of a variety of computer-related offenses and the additional evidence of his misconduct with regard to the previous MDC laptop that was seized." Crim. Dkt. Entry 954 at 4. Judge Furman has denied the

---

[4] Should the Court wish to view examples of CSAM on the Subject Device, the Government can provide examples in an *in camera* setting.

defendant's requests to be provided a replacement laptop. At a November 7, 2022 conference, Judge Furman explained:

> Unless the entirety of recent events turns out to be a massive misunderstanding and there is no issue and there was no child pornography on the computer, and other things that seem to have been done with the computer turn out to be innocent conduct rather than what they appeared to be, I assure you, you are not getting any laptop, full stop. That was above and beyond what you are entitled to. It was appropriate before the last trial. Judge Crotty came to that conclusion. I agreed with it. I certainly wasn't going to undo his ruling. But circumstances have changed. You now have been convicted at that trial, and more significantly, there is certainly probable cause to believe that you have mishandled and misused the computer and [have] done so in fairly disturbing and problematic ways.

Crim. Dkt. Nov. 7, 2022 Tr. at 8-9. Crim. Dkt. Oct. 7, 2022 Tr. at 3 ("I am not prepared to take any action . . . to provide a substitute laptop at the moment."). Accordingly, Schulte cannot possess the Subject Device at the MDC in any event.

## **Conclusion**

For the foregoing reasons, the Government respectfully requests that the Motion be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
David W. Denton, Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 / -2193

Cc: Joshua Adam Schulte (by U.S. mail)